United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 10, 2007**

Charles R. Fulbruge III
Clerk

REVISED JULY 31, 2007
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-31070

BEVERLY COLE; ANITA S PERKINS; JEWELL P LOWE

Plaintiffs - Appellees

v.

GENERAL MOTORS CORP

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana, Lafayette

Before KING, GARZA, and OWEN, Circuit Judges.

KING, Circuit Judge:

Defendant-appellant General Motors Corporation appeals the district court's certification of a nationwide Rule 23(b)(3) class of Cadillac DeVille owners who allege breach of express and implied warranties. For the reasons that follow we REVERSE the district court's Ruling and REMAND for entry of an order denying class certification.

## I. FACTUAL AND PROCEDURAL BACKGROUND

General Motors Corporation ("GM") manufactured and sold over 200,000 1998 and 1999 model year Cadillac DeVilles ("DeVilles")

-1-

in the United States.  The DeVilles feature side-impact Air Bag
Systems and Side Impact Sensing Modules ("SISMs"), the latter of
which trigger inflation of the vehicle's side impact air bags
under certain conditions.  This class action centers on alleged
defects in the SISMs.

In September 2000, GM sent a voluntary recall notice to all
DeVille record owners and lessees explaining that GM

> has decided that a defect which relates to
> motor vehicle safety exists and may manifest
> itself in your 1998 or 1999 model year
> Cadillac DeVille.  [GM] ha[s] learned of a
> condition that can cause the side impact air
> bags in your car to deploy unexpectedly,
> without a crash, as you start your car or
> during normal driving.

GM indicated that it had received 306 reports of inadvertent
deployment out of approximately 224,000 affected vehicles.  GM
further explained that it was working to obtain replacement SISMs
and that it would contact DeVille owners again when replacement
SISMs were available so that owners could take their DeVilles to
a dealership for the installation of two new SISMs.  GM expected
those replacement SISMs to be available to a first group of
owners in April 2001.  GM additionally provided safety
recommendations for the interim and a toll-free phone number for
customers who had questions.

Replacement of the SISMs was delayed because the
manufacturing line for the 1998 and 1999 SISMs had been
dismantled.  GM did not have enough replacement parts to

-2-

implement a general recall of all DeVilles until May 2001. According to GM, it devised a two-part recall plan to overcome this production problem. Using available components, GM produced 40,000 replacement SISMs by November 2000. GM referred to these as "service build modules" and offered them to owners who called the toll-free phone number and expressed particular concerns about the recall. GM engaged a third-party vendor to manufacture the remaining replacement systems, which were referred to as "replacement build modules."

Among the owners who received GM's voluntary recall notice were the named plaintiffs (and now class representatives) Beverly Cole, Anita S. Perkins, and Jewell P. Lowe (collectively, "plaintiffs"). Lowe is the mother of one of plaintiffs' counsel, Perkins is a paralegal for another of plaintiffs' counsel, and Cole is the paralegal's cousin. Each purchased a 1998 or 1999 DeVille equipped with the SISMs at issue; however, the SISMs in their vehicles were not among those that had deployed inadvertently. Nevertheless, after receiving GM's September 2000 letter, plaintiffs filed a class action suit against GM in federal court in October 2000. In response, GM contacted plaintiffs in November 2000 and offered to replace the SISMs in their DeVilles immediately with replacements from GM's stock of service build modules. According to plaintiffs, they rejected GM's offer because GM did not extend the offer to all DeVille owners and GM would not answer questions about the source of the

-3-

parts, the number available, and whether the SISMs had been properly tested.  Plaintiffs later voluntarily dismissed this first suit.

Plaintiffs filed the present class action suit in Louisiana state court on December 18, 2000.  GM removed the case on the basis of diversity jurisdiction to the Western District of Louisiana.  On January 26, 2001, plaintiffs moved for class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of "[a]ll persons and legal entities who have acquired, whether by purchase, lease, donation or otherwise . . . anywhere in the United States, 1998 or 1999 Cadillac Devilles equipped with side impact air bag systems and side impact sensing modules."[1]  Their motion for class certification specifically excluded DeVille owners "who sustained bodily injury or death as the result of the unexpected or premature deployment of a side impact air bag."

Briefing and discovery on class certification issues ensued.  Meanwhile, GM began a phased general recall of 1998 and 1999 DeVilles in May 2001 by sending recall letters to DeVille record owners and lessees.[2]  Pursuant to this general recall, Lowe's

---

[1]    Plaintiffs filed an Amended Motion for Class Certification on August 29, 2001.  All references to plaintiffs' "motion for class certification" are to the amended motion.

[2]    According to GM, letters were sent to the most recent DeVille purchasers first because the likelihood of inadvertent deployment decreased significantly over time.

SISMs were replaced in September 2001, and Perkins's and Coles's SISMs were replaced in October 2001.  According to GM, it completed mailing recall notices to all DeVille record owners and lessees on December 28, 2001, and the majority of those owners and lessees have had their SISMs replaced.  Plaintiffs do not dispute that GM's recall is now complete.

In their First Amended and Restated Class Action Complaint ("complaint"), plaintiffs allege that GM "promoted side impact air bags, which included so-called [SISMs], as an added safety feature" in its 1998 and 1999 DeVilles.  Plaintiffs also allege that GM "has . . . admitted that a defect exists in the 1998 and the 1999 Cadillac Devilles which can cause the side impact air bags to deploy unexpectedly, without a crash, when the car is started or during normal driving."  Plaintiffs further assert that GM "did not repair or replace the [SISMs] within a reasonable time after the sale and/or lease of the subject vehicles."  Based on these allegations, plaintiffs aver that GM

> has failed to deliver to plaintiffs and the class members the thing purchased, has delivered a thing other than the thing purchased, has breached express and implied warranties of sale, has sold and delivered to plaintiffs and the class members a thing containing defects under the redhibition laws of the State of Louisiana and the comparable provisions of the Uniform Commercial Code, and/or has breached contracts with plaintiffs and the class members, and such conduct has damaged plaintiffs and the class members.

Plaintiffs seek recovery from GM for

(1) return of the purchase or lease price, or, alternatively, for a reduction of the purchase or lease price, (i.e., the loss of the benefit of the bargain, or the difference between the value of the vehicle as delivered and the value it would have had if it had been delivered as warranted), and (2) for all other pecuniary and/or economic damages as permitted by the redhibition laws of the State of Louisiana and/or the comparable provisions of the Uniform Commercial Code, (3) punitive damages, if permitted, (4) interest at the legal rate from the date(s) of purchase, or alternatively, from the date of judicial demand, until paid, together with (5) reasonable attorney's fees, and all costs.

Finally, both the complaint and the motion for class certification assert that questions of law and fact common to the class included:

> (a) Whether GM breached its contractual or quasi contractual obligations to the class, including (without limitation), the warranty against vices and defects, the warranty of merchantability, and/or all express warranties and warranties implied by law;
>
> (b) Whether the defective [SISMs] with which the 1998 and 1999 Cadillac Devilles are equipped diminish the usefulness or value of the vehicles;
>
> (c) Whether the [SISMs] with which the 1998 and 1999 Cadillac Devilles are equipped are defective such that plaintiffs have been deprived of the difference in value between what they were promised and what they received;
>
> (d) Whether the 1998 and 1999 Cadillac Devilles equipped with the aforementioned side impact airbag system are fit for their intended use; and
>
> (e) Whether restitution or, alternatively,

-6-

> reduction, of the purchase and/or lease price, and other pecuniary and/or economic damages, under the redhibition laws of the State of Louisiana and/or the comparable provisions of the Uniform Commercial Code; punitive damages, if applicable; and/or attorney's fees are available to plaintiffs and the class members.

For reasons that are not apparent, the district court appointed a special master to review the motion for class certification and other related documents.[3] On September 27, 2002, the special master concluded that Rule 23's prerequisites were satisfied and recommended certification of a Rule 23(b)(3) class. GM objected to the special master's recommendation in October 2002, contending that plaintiffs lacked standing and that plaintiffs failed to satisfy Rule 23's requirements of predominance, superiority, adequacy, and typicality. Again for reasons that are not apparent, the district court took nearly three years to enter its Ruling. On August 4, 2005, the district court accepted the special master's recommendation, certified the class,[4] and named Cole, Perkins, and Lowe as class

---

[3] The opinion of the special master indicates that the parties jointly moved to appoint a special master. No such motion appears in the record, and counsel stated at oral argument that the district court appointed the special master <u>sua sponte</u>. The parties were later ordered to enter into mediation with the special master serving as mediator. The district court ordered the parties to split equally the special master's fees of $15,584.12. Neither party challenges these orders and therefore we express no opinion on the propriety of them.

[4] The district court's ruling defines the class as

representatives.

GM now brings this interlocutory appeal under Rule 23(f), asserting that the district court abused its discretion in certifying a nationwide class of plaintiffs bringing claims under the laws of fifty-one jurisdictions.  GM asserts generally the same arguments it made below.

## II. STANDING

Before we reach the questions regarding the class certification, we must resolve the standing question as a threshold matter of jurisdiction.  Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 (5th Cir. 2002).  As a jurisdictional matter, standing is a question of law that we review de novo.  Bonds v. Tandy, 457 F.3d 409, 411 (5th Cir. 2006).  Facts expressly or

---

[a]ll persons and legal entities who have acquired, whether by purchase, lease, donation or otherwise ("Acquirers"), anywhere in the United States, 1998 or 1999 Cadillac DeVilles equipped with side impact air bag systems and side impact sensing modules ("Vehicle"). *EXCLUDED* from the class are all Acquirers who sustained bodily injury or death as a result of the unexpected or premature deployment of a side impact air bag; all persons who executed, before October 26, 2000, a release in favor of General Motors Corporation ("GM"), on account of an unexpected or premature deployment of a side impact air bag; commercial lessors and dealers; any Acquirer who acquired a Vehicle after the date of the voluntary recall; any Acquirer who acquired a Vehicle after the SISM/side impact air bag system had been repaired; counsel for GM; and counsel for plaintiffs and the class.

impliedly found by the district court in the course of determining jurisdiction are reviewed for clear error.  Rivera, 283 F.3d at 319.

At an "irreducible constitutional minimum," to have standing, plaintiffs must establish three elements.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  First, plaintiffs must show that they have suffered "an injury in fact——an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'"  Id. (internal quotation marks omitted) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  Second, plaintiffs must establish "a causal connection between the injury and the conduct complained of."  Id.  Finally, it must be likely that the injury "will be redressed by a favorable decision."  Id.  (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976)).

GM argues that plaintiffs lack standing because the air bags in their vehicles never deployed inadvertently, and therefore, they cannot have suffered an injury in fact.  They argue that without actual deployment, plaintiffs' injury is speculative because plaintiffs can only claim that the SISMs in their vehicles were potentially defective.  Because plaintiffs' air bags never deployed inadvertently, GM contends that plaintiffs advance the kind of "no-injury products liability" suit we dismissed for lack of standing in Rivera, 283 F.3d at 320.

In contrast, plaintiffs argue that even though they have not suffered physical injury, they have suffered economic loss satisfying the injury-in-fact requirement because the SISMs in all DeVilles were defective at the moment of purchase. Plaintiffs allege that they contracted to purchase DeVilles with side impact air bags that would deploy only under certain circumstances involving a side impact but that they received DeVilles with air bags that could "deploy unexpectedly, without a crash" as the car is started or during normal driving. Plaintiffs further allege that GM promised to repair "any defect related to materials or workmanship occurring during the Warranty Period" within a "reasonable time," but that after admitting the defect, GM did not in fact repair or replace their SISMs within a reasonable time. Plaintiffs claim that all DeVilles contained defective SISMs at the moment of purchase and that therefore, their injury was concrete at the moment they purchased their DeVilles. They assert that their injury is that there is a difference between what they contracted for and what they actually received.

In Rivera, purchasers of a prescription drug sought recovery of economic damages after learning that the manufacturer had withdrawn the drug from the market because the drug had caused liver damage to other patients. Rivera, 283 F.3d at 317. We concluded that the Rivera plaintiffs lacked standing because they described their claim as emanating from the drug manufacturer's

-10-

failure to warn and sale of a defective product, but the plaintiffs did not claim that the drug had caused them any physical or emotional injury. Id. at 319. Although the plaintiffs quantified their injury in terms of economic damages, we concluded that merely asking for economic damages failed to establish an injury in fact because the plaintiffs never defined the source of their economic injury. Id. The plaintiffs could not assert benefit-of-the-bargain damages because they had no contract with the manufacturer. Id. at 320. Due to these factors, we determined that the injuries that the plaintiffs alleged were suffered not by them, but rather, by the non-party patients suffering liver damage. Id. at 319. And we referred to the Rivera plaintiffs' claim as a "no-injury products liability" suit. Id. at 320.

Rivera is distinguishable from the instant case. In Rivera, the plaintiffs sought damages for potential physical injuries; because they never suffered actual physical injuries, they could only allege injuries that were suffered by non-parties. The Rivera plaintiffs did not assert economic harm emanating from anything other than potential physical harm. Here, although plaintiffs do not assert physical injuries (either their own or those of other persons), they do assert their own actual economic injuries. Plaintiffs allege that each plaintiff suffered economic injury at the moment she purchased a DeVille because each DeVille was defective. Plaintiffs further allege that each

-11-

plaintiff suffered economic injury arising from GM's unreasonable delay in replacing their defective SISMs. Plaintiffs seek recovery for their actual economic harm (e.g., overpayment, loss in value, or loss of usefulness) emanating from the loss of their benefit of the bargain. Notably in this case, plaintiffs may bring claims under a contract theory based on the express and implied warranties they allege. Whether recovery for such a claim is permitted under governing law is a separate question; it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered. See Parker v. District of Columbia, No. 04-7041, slip op. at 10 (D.C. Cir. March 9, 2007) ("The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim." (citing Warth v. Seldin, 422 U.S. 490, 501-02 (1975))). We therefore conclude that plaintiffs have established a concrete injury in fact and have standing to pursue this class action.

## III. Class Certification

### A. Background

Rule 23 of the Federal Rules of Civil Procedure requires that several preliminary conditions be met before a proposed class of plaintiffs may be certified. First, Rule 23(a) provides

that certification is proper

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  If Rule 23(a)'s prerequisites of numerosity, commonality, typicality, and adequacy are met, then the proposed class must additionally satisfy one of the three provisions for certification under Rule 23(b).  Plaintiffs here sought certification of a Rule 23(b)(3) class, which requires additional showings of predominance and superiority, i.e., that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  FED. R. CIV. P. 23(b)(3).

**B.    Standard of Review**

We review a district court's decision to certify a class for abuse of discretion.  Spence v. Glock, 227 F.3d 308, 310-11 (5th Cir. 2000); Castano v. Am. Tobacco Co., 85 F.3d 734, 740 (5th Cir. 1996).  Notwithstanding the district court's broad discretion to certify a class, it must do so within the bounds of Rule 23.  Spence, 227 F.3d at 310.  The district court must "rigorously analyze Rule 23's prerequisites before certifying a

class." Id. Failure to do so or the commission of a legal error while doing so may be the basis of reversal. See, e.g., id. at 311 (concluding that because district court erred in its choice of law analysis, it therefore abused its discretion); Castano, 84 F.3d at 740 (concluding that because district court erred in predominance inquiry, it therefore abused its discretion). Although "the strength of a plaintiff's claim should not affect the certification decision," it is necessary for the district court to go beyond the pleadings to determine whether the requirements of Rule 23 have been met: "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." Castano, 84 F.3d at 745. The court must also consider "how a trial on the merits would be conducted" if the class were certified. Id. at 740. The party seeking certification has the burden of proof on Rule 23's prerequisites. McManus v. Fleetwood Enters., Inc., 320 F.3d 545, 548 (5th Cir. 2003).

**C. Analysis**

GM argues that the district court abused its discretion in concluding that plaintiffs satisfied the requirements of adequacy and typicality under Rule 23(a) and predominance and superiority under Rule 23(b)(3). Because we conclude that the district court

abused its discretion in determining that the predominance requirement was satisfied, we find it unnecessary to address all of GM's challenges.

To satisfy the predominance requirement, plaintiffs must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). In a diversity class action, as is the case here, inherent in the predominance inquiry is a determination of which states' substantive laws will apply to the claims. This is because if multiple states' laws apply and those laws vary, the variations may impact whether common issues of law and fact predominate among the class members. The Rule 23(b)(3) certification inquiry must therefore consider how "variations in state law affect predominance." Castano, 84 F.3d at 740.

Federal courts must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Plaintiffs argued and the district court agreed that under Louisiana's choice of law rules, the laws governing plaintiffs' claims are "the laws of the state where the vehicle is used by its owner or lessee and in where [sic] the contract of repair is to be performed." Thus, the laws of all fifty-one jurisdictions (all fifty states plus the District of Columbia) apply to this class action.

We have recognized that in a class action governed by the

-15-

laws of multiple states, such as this one, "variations in state law may swamp any common issues and defeat predominance." Castano, 84 F.3d at 741; accord Georgine v. Amchem Prods., Inc., 83 F.3d 610, 627 (3d Cir. 1996) (holding that predominance was defeated, in part, by the number of differing state legal standards applicable to the controversy), aff'd, 521 U.S. 591, 624 (1997). The party seeking certification of a nationwide class must therefore "provide an 'extensive analysis' of state law variations to reveal whether these pose 'insuperable obstacles.'" Spence, 227 F.3d at 313 (quoting Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986)). And the district court must then "consider how those variations affect predominance." Castano, 84 F.3d at 740. Failure to engage in an analysis of state law variations is grounds for decertification. See Castano, 84 F.3d at 741-44 (concluding that court abused its discretion in certifying class where plaintiffs had failed to properly address variations in state law such that conclusion of predominance was based on speculation); Spence, 227 F.3d at 316 (concluding that court abused its discretion in certifying class where plaintiffs had failed to carry their burden of providing an extensive analysis of applicable law).

Plaintiffs assert that they have analyzed the applicable laws of the fifty-one jurisdictions and they are "virtually the same." They conclude that predominance is unfettered in this case because any variations in the substantive law applicable to

-16-

this case are "not significant and would not affect the result." They further conclude that "neither complex jury instructions nor multiple separate trials will be required to try the common issues in this proceeding under the laws of the 51 jurisdictions."

As support for their argument, plaintiffs provided the district court with an extensive catalog of the statutory text of the warranty and redhibition laws of the fifty-one jurisdictions implicated in this suit; included in this catalog is the text of the relevant provisions of the Louisiana Civil Code[5] and the UCC provisions of forty-nine states and the District of Columbia.[6] Plaintiffs additionally provided an overview of textual variations in the relevant UCC provisions as adopted by the fifty jurisdictions. Finally, plaintiffs submitted a report from an expert on contract law who opined, after analyzing some variations, that "the few variations in the provisions of UCC Article 2 relevant to this case are such that they do not affect the result" and that Louisiana law "does not differ from Article 2 in a manner that would affect the result."

GM, on the other hand, provided the district court with

_____

[5]    Plaintiffs provide the statutory text, with commentary and case notes, for each of sections 2475, 2520, 2522, 2524, 2541, 2545, and 2548 of the Louisiana Civil Code.

[6]    Plaintiffs provide the statutory text, with commentary and case notes, for each of sections 313, 314, 316, and 714 of Article 2 of the UCC for each jurisdiction.

-17-

extensive charts of authority concerning express and implied warranty actions from the fifty-one jurisdictions showing, <u>inter alia</u>, variations among the states in regard to reliance, notice of breach, vertical privity, and presumptions of merchantability. Despite GM's showing, the district court concluded that applying the laws of fifty-one jurisdictions would not make the class unmanageable or cause individual issues to overcome common ones because Louisiana law and the relevant UCC provisions adopted by "virtually every other jurisdiction" provided similar protections for express and implied warranties. The district court adopted plaintiffs' assertion that common issues predominated over individual ones because all members of the class asserted the same "benefit of the bargain" warranty claim based on the fact that "they contracted for a vehicle that did not have a potentially defective side airbag system, but instead received a vehicle with a side airbag system that had the potential to deploy inadvertently."

We conclude that plaintiffs did not sufficiently demonstrate the predominance requirement because they failed both to undertake the required "extensive analysis" of variations in state law concerning their claims and to consider how those variations impact predominance. <u>Cf. Spence</u>, 227 F.3d at 313 (quoting <u>Walsh</u>, 807 F.2d at 1017). Plaintiffs' assertion of predominance relied primarily on the textual similarities of each

jurisdiction's applicable law and on the general availability of legal protection in each jurisdiction for express and implied warranties. Plaintiffs' largely textual presentation of legal authority oversimplified the required analysis and glossed over the glaring substantive legal conflicts among the applicable laws of each jurisdiction.

As we explain below, there are numerous variations in the substantive laws of express and implied warranty among the fifty-one jurisdictions that the plaintiffs failed to "extensively analyze" for their impact on predominance. Although plaintiffs assert that the laws of the fifty-one jurisdictions are "virtually the same," such that "no complex jury instructions" or "multiple separate trials" would be necessary, we note that many of the variations in state law raise the potential for the application of multiple and diverse legal standards and a related need for multiple jury instructions. For some issues, variations in state law also multiply the individualized factual determinations that the court would be required to undertake in individualized hearings. Specifically, the laws of the jurisdictions vary with regards to (1) whether plaintiffs must demonstrate reliance, (2) whether plaintiffs must provide notice of breach, (3) whether there must be privity of contract, (4) whether plaintiffs may recover for unmanifested vehicle defects, (5) whether merchantability may be presumed and (6) whether warranty protections extend to used vehicles.

-19-

Plaintiffs failed to articulate adequately how these variations in state law would not preclude predominance in this case.

**1. Reliance**

To create an express warranty under UCC § 2-313, an "affirmation of fact or promise" or a "description of the goods" by the seller must be part of the "basis of the bargain." UCC § 2-313. There is a clear split of authority among the jurisdictions as to whether a buyer must show reliance on a statement or representation for it to be considered part of the "basis of the bargain." See generally BARKLEY CLARK & CHRISTOPHER SMITH, THE LAW OF PRODUCT WARRANTIES § 4:16 (2d ed. 2002) (identifying three distinct approaches and collecting cases). Some jurisdictions require a strict showing of reliance. See, e.g., Hendricks v. Callahan, 972 F.2d 190, 193 (8th Cir. 1992) (applying Minnesota law); Overstreet v. Norden Labs., Inc., 669 F.2d 1286, 1289-91 (6th Cir. 1982) (applying Kentucky law); Speed Fastners, Inc., v. Newsom, 382 F.2d 395, 397 (10th Cir. 1967) (applying Oklahoma law); Hagenbuch v. Snap-On Tools Corp., 339 F. Supp. 676, 680 (D.N.H. 1972) (applying New Hampshire law); Coryell v. Lombard Lincoln-Mercury Merkur, Inc., 544 N.E.2d 1154, 1158 (Ill. App. Ct. 1989) (applying Illinois law). Other jurisdictions have no reliance requirement. See, e.g., Winston Indus., Inc. v. Stuyvesant Ins. Co., 317 So. 2d 493, 497 (Ala. Civ. App. 1975) (applying Alabama law); Young & Cooper, Inc. v.

<u>Vestring</u>, 521 P.2d 281, 291 (Kan. 1974) (applying Kansas law); <u>Villalon v. Vollmering</u>, 676 S.W.2d 220, 222 & n.1 (Tex. App. 1984) (applying Texas law); <u>Interco Inc. v. Randustrial Corp.</u>, 533 S.W.2d 257, 261 (Mo. Ct. App. 1976) (applying Missouri law). And still other jurisdictions have applied a rebuttable presumption of reliance.  <u>See, e.g.</u>, <u>Royal Bus. Machs., Inc. v. Lorraine Corp.</u>, 633 F.2d 34, 44 (7th Cir. 1980) (applying Indiana law); <u>Sessa v. Riegle</u>, 427 F.Supp. 760, 766 (E.D. Pa. 1977) (applying Pennsylvania law), <u>aff'd</u> 568 F.2d 770 (3d Cir. 1978). But plaintiffs ignored these differences.  Although plaintiffs' expert noted that some courts require reliance, instead of analyzing the variations among the jurisdictions for their effect on predominance, plaintiffs' expert dismissed the variations, contending that the promise of repair would always be relied upon by a buyer because it "always accompanies the purchase or rental of a new automobile."  Without any supporting legal authority, plaintiffs' expert opined:  "Never was a presumption of reliance, if reliance is necessary, more justified."  The district court similarly concluded that it was reasonable to presume reliance on the part of all purchasers in this case.  In doing so, the court distinguished law to the contrary from only one jurisdiction and cited no authority to support the validity of this presumption for the other jurisdictions.

Moreover, certain jurisdictions' requirement that plaintiffs show reliance as a condition for recovery greatly impacts the

-21-

predominance inquiry:  "the economies ordinarily associated with the class action device" are defeated where plaintiffs are required to bring forth individual proof of reliance.  <u>Patterson v. Mobil Oil Co.</u>, 241 F.3d 417, 419 (5th Cir. 2001) ("Claims for money damages where individual reliance is an element are poor candidates for class treatment, at best.").  In this class of more than 200,000 individuals, class members governed by the laws of states requiring strict reliance would be required to bring forth evidence of individualized reliance.  This would require the court to undertake an inquiry that would turn on facts particular to each of those class members and raises the potential that the trial would break down into multiple individual hearings.

## 2. Notice of Breach

Section 2-607 of the UCC requires consumers wishing to bring a breach of warranty claim to notify the seller of an alleged breach "within a reasonable time."  U.C.C. § 2-607(3)(2).  Plaintiffs, however, did not address the UCC's notice requirement.  In a fashion similar to its analysis of reliance, the district court presumed, without analyzing the law of any jurisdiction, that no jurisdiction would require that members of the class give GM notice of the alleged breach because GM had already acknowledged the problem.

We are not convinced, however, that all jurisdictions would

adopt this presumption.  We previously rejected the notion that

notice is useless where a breach is apparent to both parties,

observing that the notice required

> is not of the facts, which the seller
> presumably knows quite as well as, if not
> better than, the buyer, but of buyer's claim
> that they constitute a breach.  The purpose of
> the notice is to advise the seller that he
> must meet a claim for damages, as to which,
> rightly or wrongly, the law requires that he
> shall have early warning.

E. Air Lines, Inc. v. McDonnell Douglas Corp., 532 F.2d 957, 972

(5th Cir. 1976).  State law varies on what constitutes reasonable

notice and to whom notice should be given, and other courts

considering the issue in the class certification context have

noted that these variations impact predominance.  See, e.g.,

Compaq Computer v. Lapray, 135 S.W.3d 657, 673-75 (Tex. 2004)

(collecting cases and noting that variation in state law

regarding notice was among factors defeating predominance); Walsh

v. Ford Motor Co., 130 F.R.D. 260, 276 (D.D.C. 1990) (noting that

states vary in regard to the notice requirement).  Given the

variations among the states regarding the notice requirement,

plaintiffs failed to adequately analyze the impact of these

variations on predominance.

**3. Privity of Contract**

Plaintiffs similarly failed to "extensively analyze" the

variations in the law of the fifty-one jurisdictions concerning

the requirement of privity of contract.  There is a "sharp split

-23-

of authority" as to whether a purchaser may recover economic loss from a remote manufacturer when there is no privity of contract between the parties. BARKLEY CLARK & CHRISTOPHER SMITH, THE LAW OF PRODUCT WARRANTIES § 10:20 (2d ed. 2002) ("Many cases hold that [the absence of] vertical privity is a bar to recovery of primary economic loss against the remote manufacturer."). The requirement of privity is more strictly enforced in claims involving implied warranties than those involving express warranties. Id.

Plaintiffs' expert briefly addressed the privity requirement for express warranties in four states, concluding that any variations among the jurisdictions were "minor" and opining that regardless of variation, the privity requirement was inapplicable to the facts of this case. Plaintiffs' expert, however, entirely failed to address the privity requirement for implied warranties. The district court did not analyze the laws of any jurisdictions regarding privity and instead "note[d] that there may be some variations in the state laws with respect to this issue" but that those differences "could be addressed through subclasses and the normal course of individual trials that take place in large litigations." This is hardly the type of "extensive analysis" of variations in law that is required prior to certification. Cf. Castano, 84 F.3d at 742.

GM has provided its own catalog of state law variations regarding privity, which indicates that a significant number of

-24-

jurisdictions require vertical privity in an implied warranty action for direct economic loss.  See, e.g., Rhodes v. Gen. Motors, 621 So. 2d 945, 947 (Ala. 1993); Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile, 640 P.2d 851, 856 (Ariz. 1982); Hauter v. Zogarts, 534 P.2d 377, 383 n.8 (Cal. 1975); Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc., 637 So. 2d 968, 970 (Fla. Dist. Ct. App. 1994); Bodymasters Sports Indus. v. Wimberley, 501 S.E.2d 556, 561 (Ga. Ct. App. 1998); Puckett v. Oakfabco, Inc., 979 P.2d 1174, 1183 (Idaho 1999); Connick v. Suzuki Motor Co., Ltd., 656 N.E.2d 170, 180 (Ill. App. Ct. 1995), aff'd in part on other grounds, rev'd in part on other grounds, 675 N.E.2d 584 (Ill. 1996).  Other jurisdictions, however, have eliminated the privity of contract requirement and allow recovery of economic loss from remote manufacturers.  See, e.g., Morrow v. New Moon Homes, Inc., 548 P.2d 279, 289 (Alaska 1976); Nobility Homes of Tex., Inc. v. Shivers, 557 S.W. 2d 77, 81 (Tex. 1977); Cova v. Harley Davidson Motor Co., 182 N.W. 2d 800, 802 (Mich. Ct. App. 1970).

These state law variations are important, in part because they would require separate jury instructions.  Additionally, for states that have a strict privity requirement for implied warranty claims, each class member would be required to prove individually that she purchased her DeVille from GM or its agent, as opposed to an independent dealer or another individual.

-25-

Therefore, the privity of contract inquiry would turn on facts particular to each class member and thus would require individualized hearings. Other courts have declined class certification, at least in part because of variations in state law regarding privity of contract. See, e.g., Chin v. Chrysler Corp., 182 F.R.D. 448, 460 (D.N.J. 1998) (noting that plaintiffs failed to show that state law differences regarding vertical privity did not pose manageability problems); Walsh v. Ford Motor Co., 130 F.R.D. at 272 ("Along with the various implied warranty standards and other subsidiary issues . . . the numerous vertical privity rules convince this Court that a predominance of common issues are not present in this case.").

## 4. Recovery for Unmanifested Vehicle Defects

Plaintiffs additionally failed to demonstrate predominance because they did not address variations in state law regarding recovery for an unmanifested product defect. The vast majority of the members of this class never experienced any manifestation of the alleged defect.[7] But many jurisdictions do not permit the recovery of economic loss in vehicle defect cases where the vehicle has performed satisfactorily and has never manifested the

---

[7] GM's voluntary recall letter indicated that there were 306 reports of inadvertent deployment out of approximately 224,000 DeVilles. The class specifically excludes individuals who sustained bodily injury or death resulting from the inadvertent deployment of their air bags. It is conceivable that some individuals experienced inadvertent deployment but were not physically injured as a result. Therefore, they remain eligible for class membership.

-26-

alleged defect.  See, e.g., Briehl v. Gen. Motors Corp., 172 F.3d 623, 627-28 (8th Cir. 1999) (collecting cases and dismissing claims brought under any theory for allegedly defective anti-lock braking systems where plaintiffs' brakes never malfunctioned or failed).

Plaintiffs attempt to sidestep this glaring obstacle by distinguishing their claim as one brought under a contract theory (for breach of warranty) instead of products liability.  This maneuver does not escape the reality that some jurisdictions require that the alleged defect manifest itself regardless of whether the claim is brought under contract or tort.  For example, in Breihl, the plaintiffs alleged defective anti-lock braking systems and sought recovery for overpayment of their vehicles.  The Eighth Circuit held that the plaintiffs had no cognizable claims for breach of express and implied warranties—or under any other theory—where the braking systems had never malfunctioned or failed.  172 F.3d at 628 (citing to decisions under New York, Texas, and South Carolina law).  Likewise, the Fourth Circuit, looking specifically at recovery of diminished resale value, held that there is no recovery for breach of implied warranties under South Carolina law where a vehicle had never manifested the alleged defect.  Carlson v. Gen. Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989).  Other jurisdictions have similarly held that actual manifestation of a vehicle defect is a prerequisite to recovery under warranty

theories.  See In re Air Bag Prods. Liab. Lit., 7 F. Supp. 2d 792, 805 (E.D. La. 1998) (dismissing warranty claim based on defective air bags brought under Texas law where plaintiffs never alleged that the air bags functioned improperly); Weaver v. Chrysler Corp., 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (dismissing warranty claim based on defective integrated child safety seats brought under New York law where plaintiff had experienced no problem with the child seat in his vehicle); Yost v. Gen. Motors Corp., 651 F. Supp. 656, 658 (D.N.J. 1986) (dismissing claim for breach of implied warranty of merchantability brought under New Jersey law where plaintiff did not allege any actual mechanical difficulties with his vehicle); Feinstein v. Firestone Tire & Rubber Co., 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (dismissing warranty claims based on defective tires brought under New York law where defect never manifested); Am. Suzuki Motor Corp. v. Superior Court, 44 Cal. Rptr. 2d 526, 531 (Cal. Ct. App. 1995) (dismissing warranty claim brought under California law where defect never manifested).

Yet it is not clear that the actual manifestation of a vehicle defect is a common prerequisite for recovery under warranty law in all jurisdictions.  See In re Bridgestone/Firestone, Inc., 155 F. Supp. 2d 1069, 1099-1101 (S.D. Ind. 2001) (holding that manifestation of vehicle defect is not required under Tennessee and Michigan law for recovery under express and implied warranty theories), rev'd on other grounds,

288 F.3d 1012 (7th Cir. 2002); <u>see also</u> <u>In re</u>

<u>Bridgestone/Firestone, Inc.</u>, 288 F.3d 1012, 1017 (7th Cir. 2002)

(contemplating that it is not clear whether bringing a defect-

based claim under contract law rather than tort avoids the

requirement that the product defect manifest itself but

commenting that "most states would not entertain" recovery under

a warranty theory where plaintiffs' product had not failed).

Such variations, which are likely to preclude recovery for some

class members, further show that plaintiffs failed to carry their

burden of showing that common issues of law predominate.

## 5. Presumptions of Merchantability

Even among those jurisdictions that might allow recovery for

an unmanifested vehicle defect, there are variations in their

laws.  In some jurisdictions, use of a vehicle for a certain

period of time without experiencing a defect gives rise to a

presumption that the vehicle is merchantable.  <u>See, e.g.</u>, <u>Walsh</u>,

130 F.R.D. at 273 (noting that prolonged use of a product raised

a presumption of merchantability in four states, which would

require an individualized inquiry into each state's requirements

and each plaintiff's circumstances).  Plaintiffs failed to

address these presumptions, how they vary, and the potential

individualized legal questions they present.

## 6. Warranty Protections for Used Vehicles

Finally, jurisdictions vary in regard to whether an implied

warranty extends from a remote manufacturer to a purchaser of

used goods.  Compare Gen. Motors Corp. v. Halco Instruments, Inc., 185 S.E.2d 619, 622 (Ga. Ct. App. 1971) (holding that purchaser of used goods has no implied warranty claim against manufacturer), with Int'l Petroleum Servs., Inc. v. S & N Well Serv., Inc., 639 P.2d 29, 34 (Kan. 1982) (stating that the extent of the implied warranty obligation in transactions involving used goods depends on the circumstances of the transactions).  The class of plaintiffs here is composed of purchasers of both new and used cars.  Plaintiffs again failed to analyze the impact of these variations in state law on the legal standards class members would be held to, the jury instructions, and trial management, (i.e., how the trial would be affected by the possible need to conduct individualized inquiries into whether class members bought used versus new cars).

## IV. CONCLUSION

Plaintiffs have failed to adequately address, much less "extensively analyze," the variations in state law we discussed above and the obstacles they present to predominance.  The district court was not in a position to determine that "questions of law and fact common to the members of the class predominate" in the vacuum created by plaintiffs' omission.  See Castano, 84 F.3d at 742-43 & n.15; Spence, 227 F.3d at 313.  Given these significant variations in state law and the multiple individualized legal and factual questions they present, we conclude that plaintiffs have failed to carry their burden in

-30-

establishing predominance and that the district court abused its discretion in certifying the class action.

Accordingly, the district court's Ruling granting class certification is REVERSED and the case is REMANDED for entry of an order denying class certification.  Costs shall be borne by plaintiffs.