# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30167

United States Court of Appeals
Fifth Circuit

**FILED**

January 29, 2018

Lyle W. Cayce
Clerk

CLAIMANT ID 100187856,

  Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

  Objecting Parties - Appellees

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.

CARL E. STEWART, Chief Judge:

This appeal arises from the class-action settlement program established for civil claims resulting from the Deepwater Horizon Incident ("Spill"). After being denied on every level of review within the Court Supervised Settlement Program ("CSSP"), Plaintiff-Appellant, JAD Contractors, LLC ("JAD"), sought discretionary review from the district court. The district court denied discretionary review. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

The Claims Process

After the Spill, BP and a class of individuals reached a final E&P Settlement Agreement ("Agreement") in May 2012 for those individuals and entities who experienced economic and property damages as a result of the Spill. The Agreement provides for claim resolution using various procedures, depending upon the type of claim and proximity to the Spill. To receive compensation, claimants must submit a claim to the CSSP and show that they are members of the class as defined by the Agreement.

Submitting a claim requires providing verified forms and documentation proof such as tax returns and profit/loss statements. An existing business seeking compensation completes a Business Economic Loss ("BEL") form. Once the documents are submitted the program accountants examine the provided documents to calculate the award amount. The award amount represents the difference between the business's actual profit during the compensable period and the profit it would have expected during that period had the Spill not occurred.

After the CSSP makes a determination about a particular claim's eligibility, either the claimant or BP may avail themselves of a multi-tiered internal review. After multiple levels of review, an appeal panel hears the claims de novo and issues "final" decisions. The district court retains the power of discretionary review, and if the decision is appealed, the court treats the panel's decision like a magistrate judge's report and recommendation.

The Class

The Agreement provides: "If a person or entity is included . . . in Section 1.2, and their claims meet the descriptions of the Damage Categories in Section 1.3, that entity is a member of the [Class]."[1] Section 1.2 defines the class as:

> All Entities doing business or operating in the Gulf Coast Areas . . . that: are service businesses . . . who performed their full-time services while physically present in the Gulf Coast Areas . . .  at any time from April 20, 2010 to April 16, 2012 . . . .

Section 1.3 explains "[e]ntities who meet the geographical descriptions of . . . 1.2 above are included in the Economic Class only if [they experience a l]oss of income, earnings or profits . . . as a result of the **DEEPWATER HORIZON INCIDENT** . . . ."

Exhibit 4A establishes what documents a BEL class member must provide to be eligible for compensation. Exhibit 4B identifies class members who do not have to show *any* additional evidence of causation and specifies how other class members meet their causation requirements. These are the only causation requirements as we established in *Hutto v. BP Expl. & Prod.*, 753 F.3d 509 (5th Cir. 2014). Exhibit 4C provides program accountants with the framework for compensation.[2] Class members are only entitled to compensation for loss that occurred between May and December 2010. Even still, their compensation is calculated by subtracting actual earnings from the earnings they would have expected had the Spill not occurred. If a class member has no documentary

---

[1] JAD claimed to be an existing business, not a start-up or a business that failed as a result of the Spill. As such, this opinion only addresses the provisions and claims pertaining to similarly situated businesses.

[2] Particularly, Exhibit 4C explains:

> The compensation framework for business claimants compares the *actual profit* of a business during a defined post-spill period in 2010 to the profit that the claimant might have *expected* to earn in the comparable post-spill period of 2010. . . . Compensation Period is selected by the Claimant to include three or more consecutive months *between May and December 2010.*

support of their expected earnings, program accountants cannot calculate compensation.

The Claimant

On June 10, 2013, JAD, a construction company in operation since 2004, timely submitted a BEL claim to the CSSP for damages it incurred in Gulf Coast Economic Zone C. On June 10, 2015, the CSSP sent an incompleteness notice, asking JAD to supplement the information in JAD's profit/loss statements. The same request was sent again on July 21, 2015.[3] On April 04, 2016, a Program Accountant again asked JAD to supplement the documents and explain the absence of revenue between January 2010 and April 2011. On April 12, 2016, another incompleteness notice was sent, to which JAD responded, on April 14, stating it was still in operation and actively seeking work. On May 9, 2016, the CSSP denied JAD's claim because they were "unable to determine causation and/or calculate a compensation amount under the BEL frameworks because [JAD was] not doing business or operating in the Gulf Coast Areas . . . at the time of the Oil Spill, April 20, 2010."

JAD requested re-review. In its decision the administrator reiterated the previous reasoning and further explained that JAD was inactive "from January 2010 through April 2011 because it reported no revenues or variable operating expenses." It additionally reasoned that JAD, in its tax reconciliation, stated it did not have revenue or expenses in 2010. Thus, JAD had "not provided documents indicating that the business was operating at the time of the Oil Spill."

JAD requested reconsideration. This time an administrator denied JAD's reconsideration, stating:

---

[3] It is not clear from the record whether this second request was prompted because JAD again submitted insufficient documents or no additional documents at all.

> The specific requirements for eligibility as a member of the Settlement Class, as laid out in Section 1.2 and Section 1.3 of the Settlement Agreement, have not been satisfied as the claimant has still not provided specific documentation indicating it was doing business or operating in the Gulf Coast areas . . . at the time of the Oil Spill, April 20, 2010.

This was the first time class eligibility was cited as a reason for the denial.

JAD appealed to the appeal panel. Reviewing de novo, the panel affirmed the CSSP's original denial and did not mention class eligibility. The panel instead held that the documents JAD presented were "simply insufficient evidence to support the conclusion that JAD was actively seeking jobs and incurring expenses between January 2010 and April 2011." JAD then sought discretionary review from the district court, which summarily denied the claim. JAD timely appealed.

## II.    DISCUSSION

### A. Standard of Review

We review the district court's decision not to exercise discretionary review for abuse of discretion. *See Steering Comm. v. BP Expl. & Prod.*, 785 F.3d 1003, 1011 (5th Cir. 2015).  However, when the district court is presented with a purely legal question of contract interpretation, the standard of review is effectively de novo. *See id.* (quoting *United States v. Delgado-Nuñez*, 295 F.3d 494, 496 (5th Cir. 2002) ("[A]buse of discretion review of purely legal questions . . . is effectively de novo because a district court by definition abuses its discretion when it makes an error of law."). Yet still, review is not mandatory, *Lake Eugenie Land Dev., Inc. v. BP Expl. & Prod.*, 785 F.3d 986, 999 (5th Cir. 2015), and we may affirm on any ground supported by the record. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

### B. Applicable Law

The district court abuses its discretion in denying review of an appeal if the panel substantially misapplies or misconstrues the Agreement. *See Claimant*

*ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017). Even if the panel's decision does not constitute a misapplication, if (1) the issue is regularly before the panel; (2) panels have rendered different decisions on the issue; and (3) the issue's resolution will significantly impact the Agreement's administration, the district court may abuse its discretion in declining review. *See id.*

C. Analysis

1. Dormancy & Award Calculation

When parties enter into a settlement agreement, the terms of that agreement govern disputes arising from the agreement's implementation. *See Lake Eugenie*, 785 F.3d at 994. According to the present Agreement, a claimant's class membership does not guarantee it will receive an award. Once a claimant clears the hurdle of class eligibility, it faces additional obstacles. The Agreement sets compensation calculations and requires the class member to provide certain documents that render program accountants able to calculate an award amount using the agreed upon equation. Upon receipt, the accountants then use those documents to determine the profit the company made in the years before the Spill, review the entity's actual profit during the specified months, and then calculate the award amount, subtracting actual profits from expected profit. Using this calculation, claimants can be class members because they meet the class definition and still receive no compensation because they were inactive during the entire agreed upon compensable period.

Although the period that defines the class ranges from April 20, 2010 to April 16, 2012, the parties agreed that the compensable period is May 2010 through December 2010 for BEL class members. Accordingly, regardless of whether the panel found that JAD's inactivity from April 2010 through April 2011 made it ineligible for the class, program accountants could not have

6

calculated an amount to award JAD because JAD was inactive during the entire compensable period.

JAD submitted its claim on June 10, 2013. The CSSP asked JAD to supplement the documents multiple times and gave JAD ample opportunity to prove that it was active during the compensable period. The CSSP eventually denied JAD's claim because it was "unable to determine causation and/or calculate a compensation amount under the BEL frameworks because [JAD was] not doing business or operating in the Gulf Coast Areas . . . at the time of the Oil Spill, April 20, 2010." The administrator who conducted re-review found the same. Then the reconsideration administrator, for the first time, found that JAD had not satisfied the requirements for class eligibility. The panel, after receiving even more documents and reviewing the record de novo, did not address class eligibility and found instead that JAD presented insufficient evidence to support the company's assertion that it actively sought work during the compensable period.[4]

This decision was correct. Although JAD sufficiently alleged that it was a business entity located in the Gulf Area between April 2010 and April 2012, it did not provide the CSSP with adequate documentation to calculate profits JAD expected to generate between May and December 2010, as the Agreement required. Program accountants asked JAD to provide documentation showing activity or explaining its inactivity four times between January 2009 and April 2011. When it finally responded, JAD simply stated that it was actively working. At the final level of appeal, it provided additional documents in support of that assertion: insurance documents, a payment request, and invoices for office supplies. These documents were inadequate. The insurance

---

[4] JAD argued that the panel required it to be in business on the day of the Spill, April 20, 2010. This is not supported by the record. The panel, in accord with the Agreement, asked JAD to show it was in business May through December 2010.

documents represented a premium refund for insurance predating 2010 and illuminated that JAD was also uninsured from April 2010 through December 2010. JAD had one policy from April 2009 through April 2010, and it renewed in December 2010 through December 2011. So although JAD presented the documents to invoke the inference that it had to be in business since it was insured, the documents did the opposite, showing JAD was not insured during the entire compensable period. The payment request was for work completed before April 2010, and the invoices were dated April 2011, after the compensation period. All of these documents further supported that JAD was inactive during the compensation period, and they did not provide the program accountants with the ability to calculate the profits JAD expected May through December 2010.

Panels consistently deny claims where the entity shows no revenue or expenses for that period and also presents no documentation evidencing an ardent attempt to find work. In 37 APD 2017-370 (Mar. 23, 2017), the panel upheld a commercial real estate lessor's claim denial because the property went without a tenant, no revenue, and minimum expenses. When asked to provide documentation to assist the program accountant in calculating an award amount, the claimant presented insufficient evidence that it was actively seeking a tenant during the compensable period. The panel decided similarly in 23 APD 2015-186 (Nov. 20, 2016), when it upheld the denial of a window cleaning business's claim where the business was inactive during the entire compensable period.

Furthermore, panels consistently reverse denials when BEL claimants demonstrate they actively sought work. Although the commercial real estate lessor in 25 APD 2016-128 (Feb. 24, 2016) had no revenue or expenses from February 2010 through April 2011, the panel reversed the denial because the owner showed that it was actively seeking business during the compensable

period. The same was done in multiple other claims. *See* 26 APD 2016-279 (Apr. 4, 2016) (reversed denial because inactivity from January 2009 through August 2010 did not preclude entity from class membership, it only negatively affected the award amount); 39 APD 2017-742 (2017) (reversed denial of real estate agent's claim even though it had no revenue and expenses for a period of time because it showed that the nature of its work was sporadic). JAD made no attempt to provide similar support, and the documents it offered further supported the panel's decision. Class members who do not provide any documentation explaining their inactivity during the compensable period are consistently denied. Therefore, the panel did not misapply the Agreement in denying JAD's claim, and the district court did not abuse its discretion.

2. Class Membership

Foregoing argument that the CSSP misapplied the Agreement by holding that it was unable to calculate an award, JAD instead offered the same argument as BP. Both BP and JAD aver that the panel found that JAD was not entitled to compensation because it experienced a period of inactivity and, thus, was not a class member. JAD argues that this was an errant decision. BP argues that this was the right one. The panel found that JAD was not entitled to compensation as a result of its inactivity; however, the panel's "why" surrounded the compensation calculation, not class membership.

As previously contested by BP, traceability is again challenged here. *See Hutto*, 753 F.3d at 512–13. In order for an individual to have standing to bring a case, there must be, *inter alia*, a causal connection between a plaintiff's injury and a defendant's conduct. *See id.* at 513. In *Hutto*, we held that in class action claims, individuals who meet the class definition maintain traceability and are class members. *Id.* at 512–13 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The class action claimants simply have to allege causation to

satisfy Article III traceability. *See id.* ("Allegations of causation are sufficient to satisfy Article III in a class action complaint and in class action definition.").

The panel did not misapply or misconstrue the Agreement in determining JAD's class status. Contrary to the parties' beliefs,[5] the panel did not conclude that JAD was ineligible for the class. A claimant seeking class membership must only allege that the defendant caused its injury. *Id.* at 513. The parties agreed that a class member is one who meets the requirements of section 1 of the Agreement. Section 1.2 of the Agreement's plain language says any entity operating in the Gulf area *at any time* from April 20, 2010 through April 16, 2012 is a class member[6] if they experience a loss defined in section 1.3. Section 1.3 of the Agreement further defines class members as those individuals or entities defined in section 1.2 who experienced a loss as a result of the spill.[7]

As established in *Hutto*, claimants simply have to *allege* that they are members of the class. *Id.* at 512–13. Here, that allegation is made in the parties' agreed-upon claimant form, which requires claimants to certify they meet the class definition under penalty of perjury. JAD completed and signed the forms and thus sufficiently alleged that it was a class member.

The parties' misunderstanding is not without merit. Instead of conducting the analysis piece-by-piece and determining class membership separately from award calculation, the administrator simply gives the reasoning as to why a

---

[5]JAD makes an argument similar to the one previously made by BP: the class administrator was supposed to use Exhibit 4B to find a causal nexus and approve its claim. This argument fails. We have already held Exhibit 4B causation requirements do not affect class membership. *Hutto*, 753 F.3d at 513. ("Exhibit 4B . . . [is an] evidentiary framework[] that [has] no effect on the claimants' allegations or on the class definition."). Neither do Exhibit 4C requirements.

[6] JAD easily clears the Section 1.2 hurdle. Although there was some time of inactivity, the parties concede that JAD was operating a business by April 2011 and continues to operate. Thus, JAD operated in the Gulf area between April 20, 2010 and April 16, 2012.

[7] JAD also alleged economic loss, during that time and as a result of the Spill, meeting the Section 1.3 requirements. Therefore, JAD is a class member as defined by the Agreement.

claimant would not receive an award. The initial review administrator, the re-review administrator, and the final review panel did not reason that JAD's lack of activity precluded it from the class.[8] Instead the panel stated it could not calculate an award because of the lack of activity during the compensable period.

Despite BP's familiar argument,[9] JAD's alleged temporary dormancy does not affect its class status. Beyond the established rule that we must "assume arguendo the elements of [each claimant's] legal claim," *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007), the required claim form that a claimant must complete and submit is signed under the penalty of perjury, further establishing that allegations are sufficient. Furthermore, this argument ignores precedent and attempts to set a higher burden for class action claimants in blatant disregard of that same precedent. *Hutto*, 753 F.3d at 512–13.

Accepting JAD's class membership but otherwise denying the claim is in line with other panel decisions. In fact, the panel has explicitly stated that dormancy has no effect on class membership. In 26 APD 2016-279 (Apr. 4,

---

[8] The administrator who conducted the reconsideration did find that JAD was not a member of the class because of the period of inactivity. However, it does not necessarily follow that the panel affirmed for these reasons. The panel conducts a de novo review and makes its own determination. In its decision, the panel did not repeat the language the reconsideration administrator used. It did not mention class eligibility or causation. If the panel followed the reasoning of the reconsideration administrator, this was likely error and a misinterpretation of the Agreement that should have been reviewed by the district court. That methodology goes directly against precedent set by this Court and heightens Article III standing requirements. *See Hutto*, 753 F.3d at 512. However, this is likely not the methodology the CSSP undertook because again, only one of the four review panels said that JAD was ineligible to be a part of the class because of its dormancy.

[9] In 2014 BP attempted to argue that if the panel did not ensure that a claim contained a direct causal nexus, its constitutional and contractual rights would be violated. *Hutto*, 753 F.3d at 512–13. Now it argues that here the panel conducted this causal calculation that this court held was inaccurate and ruled in its favor as a result. We again disagree. If the panel acted as BP avers, it committed substantial error reviewable by the district court.

2016), the panel reversed an administrator's decision to deny the claim of a commercial real estate lessor, who generated no revenues or expenses from January 2009 through August 2010. The initial reviewer determined that this time of inactivity made the business ineligible for class membership. The panel directly addressed this error saying:

> The fact that the property was not leased from January 2009 through August 2010 is of no real importance as to whether the Claimant is a member of the class. It most certainly is. The issue which appears to stump the Vendor Accountants was the amount of the award.

26 APD 2016-279. Thus, the CSSP has already found that dormancy does not affect class status but only the calculation of the award.

Because JAD's allegations of class membership are sufficient, JAD is a class member. Despite the period of inactivity, the parties concede that JAD provided documentation demonstrating it was operating by April 2011 and continues to operate. So JAD meets section 1.2 requirements. JAD also alleged economic loss as a result of the Spill, meeting the Section 1.3 requirements. Therefore, the CSSP likely did not misapply or misconstrue the agreement because it did not decide that JAD's inactivity precluded it from the class. It instead found that JAD was a class member, who did not provide sufficient documentation for the Program Accountant to calculate an award.[10]

### III.   CONCLUSION

The district court's judgment is AFFIRMED.

---

[10] Although there was likely no misapplication of the Agreement, this is likely a question of law that can potentially substantially impact Agreement administration if the CSSP precludes dormant individuals from the class, instead of considering them class members presenting noncompensable claims.