# United States Court of Appeals
## For the First Circuit

No. 14-1130

TIM KERIN, on behalf of himself
and all others similarly situated,

Plaintiff, Appellant,

v.

TITEFLEX CORPORATION t/a GASTITE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Chief Judge,
Ripple[*] and Selya, Circuit Judges.

Kevin T. Peters, with whom Erika Todd and Arrowood Peters LLP were on brief, for appellant.
John G. Papianou, with whom Charles B. Casper, Montgomery, McCracken, Walker & Rhoads, LLP, Jeffrey E. Poindexter, Jodi K. Miller, Bulkley Richardson and Gelinas, LLP were on brief, for appellee.

November 4, 2014

* Of the Seventh Circuit, sitting by designation.

**LYNCH, Chief Judge**. This products liability case concerns the question of standing based on a theory of enhanced risk of future injury. Tim Kerin appeals the dismissal of his case against Titeflex Corporation t/a Gastite ("Titeflex") for an alleged product defect in Gastite corrugated stainless steel tubing ("CSST"), which causes risks of CSST being vulnerable to failure after lightning strikes. The District Court of Massachusetts dismissed for lack of standing because Kerin's injury was too speculative. Kerin v. Titeflex Corp., No. 13-cv-30141-MAP, 2014 WL 67239, at *1-2 (D. Mass. Jan. 7, 2014).

We do not hold that increased risk of harm from product vulnerability to lightning strikes can never give rise to standing. But in this case, Kerin fails to allege either facts sufficient to assess the probability of future injury or instances of actual damage where the cause is clear, and concedes that CSST meets applicable regulatory standards specifically addressing the risk.

We affirm dismissal based on lack of standing.

I.

Facts & Procedural Background

Kerin owns a house in Florida which has Gastite CSST installed to provide gas for his outdoor firepit. His complaint purported to bring a class action against Titeflex, the manufacturer of Gastite, for an alleged product defect. He brought

-2-

the claim under diversity jurisdiction in Massachusetts, where Titeflex is located.

Introduced in the 1980s, CSST is used in home and commercial structures throughout the country. It has since been discovered that CSST may fail when exposed to electrical insult, such as that caused by lightning. See Nat'l Fire Prot. Ass'n, NFPA 54 FAQs ¶ 6 [hereinafter NFPA 54 FAQs], available at https://www.nfpa.org/Assets/files/AboutTheCodes/54/54_FAQs.pdf (last visited Oct. 31, 2014) (discussing a mitigation measure). Both direct and indirect lightning strikes can cause an electrical arc that can puncture CSST, igniting the natural gas within. Kerin alleges that "CSST's significant risks are well-established," and that industry "experts" recommend "several possible remedies, including complete removal." Kerin also alleges that, "[a]s of August 2011, 141 fires involving lightning and CSST have been reported throughout the United States." Titeflex has allegedly "been aware of the risks that its product creates . . . . since at least 2004," and developed a new product, FlashShield, in 2012 to address risks associated with lightning. But despite these "known risks," Gastite CSST continues to meet code requirements and is still used in buildings throughout the country. See, e.g., National Fuel Gas Code, ANSI Z223.1-2015 (NFPA 54-2015) § 5.6.3.4 (2015 ed.); National Fuel Gas Code, ANSI Z223.1-2012 (NFPA 54-2012) § 5.6.3.4 (2012 ed.); Mass. Bd. of State Exam'rs of Plumbers & Gas

-3-

Fitters, Board Policy: Corrugated Stainless Steel Tubing (CSST) (Feb. 4, 2009) [hereinafter Mass. Board Policy], available at http://www.mass.gov/ocabr/government/oca-agencies/dpl-lp/regarding-corrugated-stainless-steel-tubing-csst.html (last visited Oct. 31, 2014).

Kerin's July 2013 complaint asserted four causes of action under Massachusetts law, each based on allegations of Gastite CSST's vulnerability to lightning strikes: "strict liability for design and manufacturing defects, negligence in design[ing] and failing to test the product, negligence in failure to warn, and strict liability in failure to warn." Kerin does not allege that this vulnerability of his home's CSST to lightning strikes has manifested in any actual harm. Rather, he seeks damages "that may be measured as his overpayment or as the cost of remedying the safety issue."

The district court dismissed for lack of standing, stating that "it is obvious that Plaintiff cannot clear the 'injury in fact' hurdle." Kerin, 2014 WL 67239, at *1. The court reasoned that the "strand of conjecture . . . is simply too attenuated," requiring both a lightning strike and one that effects a puncture in the CSST. Id. The court also concluded that, even if Kerin had standing, Kerin failed to state a claim because he failed to allege "an applicable standard against which [Titeflex's] due care could be measured" as required to claim economic injury from a defective

product under Massachusetts law.  Id. (citing Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 888 (Mass. 2008)).

## II.

## Analysis

We do not adopt the district court's reasoning to the extent it relies on the proposition that lightning strikes present a textbook example of speculative risk and remote possibilities which are simply insufficient for injury in fact.  Cf. Mountain States Legal Found. v. Glickman, 92 F.3d 1228, 1234 (D.C. Cir. 1996) (finding standing for increased risk of wildfire, a "probabilistic event").  Although "[t]he capriciousness of a lightning strike is the stuff of folklore," Kerin, 2014 WL 67239, at *1, the law of probabilistic standing is evolving,[1] and it is conceivable that product vulnerability to lightning might, in some circumstances, constitute injury.  But where, as here, the alleged present harm depends solely on the risk of some future injury, we

---

[1]  A survey of the case law reveals that the treatment of enhanced risk claims is in a state of flux.  Compare cases denying standing, see, e.g. Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1155 (2013); Blum v. Holder, 744 F.3d 790, 803 (1st Cir. 2014), with those finding standing, see, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 184-85 (2000); Baur v. Veneman, 352 F.3d 625, 633-36 (2d Cir. 2003) (collecting cases) (discussing developments and finding enhanced risk sufficient for injury in fact "[i]n the specific context of food and drug safety suits"); Mountain States, 92 F.3d at 1234 (discussing "probabilistic injuries" and finding standing for "increased risk of catastrophic wildfire").  See also Katz v. Pershing, LLC, 672 F.3d 64, 80 (1st Cir. 2012) (noting disarray among circuits over standing for enhanced risk of harm from data breach).

must proceed cautiously.  See Ctr. for Law & Educ. v. Dep't of Educ., 396 F.3d 1152, 1161 (D.C. Cir. 2005) (Sentelle, J.) ("[W]ere all purely speculative 'increased risks' deemed injurious, the entire requirement of 'actual or imminent injury' would be rendered moot.").  Because Kerin fails to allege risk sufficient to find injury, we affirm the district court's dismissal.

A.      Standard of Review

       The existence of standing is a legal question, which we review de novo.  See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012).  When reviewing a pre-discovery grant of a motion to dismiss for lack of standing, "we accept as true all well-pleaded fact[s] . . . and indulge all reasonable inferences" in the plaintiff's favor.  See id. at 70-71 (quoting Deniz v. Mun'y of Guaynabo, 285 F.3d 142, 144 (1st Cir. 2002)) (internal quotation marks omitted).  We may affirm dismissal "on any ground made manifest by the record."  See id. at 71 (quoting Román-Cancel v. United States, 613 F.3d 37, 41 (1st Cir. 2010)) (internal quotation marks omitted).  Because no class was certified below, our review is limited to whether Kerin himself has standing.  See id.

B.      Standing Based on Enhanced Risk of Injury

       Our judicial power is limited by Article III of the Constitution to actual cases and controversies.  See Warth v. Seldin, 422 U.S. 490, 498 (1975).  "One element of the case-or-controversy requirement is that plaintiffs must establish that they

-6-

have standing to sue."  See Blum v. Holder, 744 F.3d 790, 795 (1st Cir. 2014) (quoting Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013)) (internal quotation marks omitted).  "This requirement 'is founded in concern about the proper -- and properly limited -- role of the courts in a democratic society.'"  Id. at 795-96 (quoting Summers v. Earth Island Inst., 555 U.S. 488, 492-93 (2009)).

To satisfy this standing requirement, a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'"  See id. at 560 (internal citations omitted) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  Imminence, which plays a central role in cases of probabilistic standing, "is concededly a somewhat elastic concept."  See Clapper, 133 S. Ct. at 1147 (quoting Lujan, 504 U.S. at 565 n.2) (internal quotation marks omitted).  "[I]ts purpose . . . is to ensure that the alleged injury is not too speculative for Article III purposes."  See id. (quoting Lujan, 504 U.S. at 565 n.2) (internal quotation marks omitted).

Cases claiming standing based on risk, such as this, potentially involve two injuries: (1) a possible future injury that

-7-

may or may not happen (i.e., the harm threatened); and (2) a present injury that is the cost or inconvenience created by the increased risk of the first, future injury (e.g., the cost of mitigation). See Blum, 744 F.3d at 796 (quoting Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st Cir. 2003)) (identifying two injuries in context of First Amendment challenge: the present injury, a chilling effect, caused by the threat of future injury, criminal prosecution); see also Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 155 (2010) (recognizing that present costs to mitigate risk of crop infection would occur even if crops were never actually infected). These cases require caution, because although one of the alleged injuries is present, satisfying imminence, that injury may still be speculative. This is because the alleged present injury depends on the plaintiff's response to an increased risk, and whether his or her response constitutes a reaction for which compensation is owed or constitutes a mere attempt to "manufacture standing." Compare Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 184-85 (2000) (finding standing where plaintiffs responded to increased risk of health hazards from pollution by "refraining from use of the North Tyger River"), with Clapper, 133 S. Ct. at 1151 (denying standing for "incurr[ing] . . . costs as a reasonable reaction to a risk" where risked harm was not "certainly impending"). For this

-8-

reason, cases claiming standing based on risk fall into at least two categories.

In the first, where standing is more frequently found, the present injury is linked to a statute or regulation or standard of conduct that allegedly has been or will soon be violated. See, e.g., Laidlaw, 528 U.S. at 181-84; Baur v. Veneman, 352 F.3d 625, 634-35 (2d Cir. 2003). Cases in this first category are easier, in part because the legislature and executive agencies -- the branches tasked with evaluating risks and developing safety standards -- have already identified the risk as injurious. See, e.g., Laidlaw, 528 U.S. at 181-84 (finding that refraining from using a polluted river constituted injury in fact even though the district court found that the "permit violations at issue . . . did not result in any health risk or environmental harm"); Baur, 352 F.3d at 634-35 (noting the "tight connection between the type of injury . . . allege[d] and the fundamental goals of the statutes . . . sue[d] under"); Cent. Delta Water Agency v. United States, 306 F.3d 938, 948 (9th Cir. 2002) (explaining that "to require actual evidence of environmental harm, rather than an increased risk based on a violation of the statute, misunderstands the nature of environmental harm" (emphasis added) (internal quotation marks and citation omitted)).

In the second category, the present injury has not been identified and so is entirely dependent on the alleged risk of

future injury.  See, e.g., Blum, 744 F.3d at 796 (discussing case where present chilling effect dependent on threat of specific future harm).  Cases falling in this second category require greater caution and scrutiny because the assessment of risk is both less certain, and whether the risk constitutes injury is likely to be more controversial.  See, e.g., Katz, 672 F.3d at 80 (noting split over whether victims of mere data breach have suffered injury in fact).[2]

Indeed, not all risks constitute injury.  As the D.C. Circuit has noted, "were all purely speculative 'increased risks' deemed injurious, the entire requirement of 'actual or imminent injury' would be rendered moot, because all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk of future injury.'"  Ctr. for Law & Educ., 396 F.3d at 1161; see also Baur, 352 F.3d at 637 (noting the "potentially expansive and nebulous nature of enhanced risk claims").  For these reasons, the plaintiff, who always carries the burden of establishing standing, faces a more difficult task when alleging enhanced risk without alleging a statutory or regulatory violation (actual or imminent). See Blum, 744 F.3d at 795 (quoting Clapper, 133 S. Ct. at 1148)

---

[2]  Compare Krottner v. Starbucks Corp., 628 F.3d 1139 (9th Cir. 2010), and Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629 (7th Cir. 2007) (finding standing), with Reilly v. Ceridian Corp., 664 F.3d 38 (3d Cir. 2011) (denying standing).

("The party invoking federal jurisdiction bears the burden of establishing standing." (internal quotation marks omitted)).

Kerin's complaint falls into the latter category. Although he argues that his injury is one recognized under Massachusetts law governing "dangerously defective product[s]," he "concedes that the CSST in question does not violate any applicable regulatory standard," Kerin, 2014 WL 67239, at *1 (emphasis added), as is required to state a claim for a dangerously defective product in the absence of actual damage, see Iannacchino, 888 N.E.2d at 888. His purported present injury, "overpayment" for a defective product and the cost of replacement, is thus entirely dependent on an unsupported conclusion that the CSST is defective, coupled with a speculative risk of future injury (fire in the event of a lightning strike). We evaluate his claim in light of these distinctions.

C.      Enhanced Risk from Lightning Strikes

We agree with Kerin that the risked harm, if actualized, could be severe. But whether a risk is speculative also depends on the chances that the risked harm will occur. See Mountain States, 92 F.3d at 1234-35. Although a small probability of a great harm may be sufficient, see Vill. of Elk Grove Vill. v. Evans, 997 F.2d 328, 329 (7th Cir. 1993) (recognizing that "even a small probability . . . is sufficient . . . [provided] the relief sought would, if granted, reduce the probability"), Kerin has failed to

meet his burden of pleading that the risk of CSST causing a lightning fire in his home is anything but remote.

First, Kerin fails to allege facts sufficient to even calculate or estimate the risk. For example, Kerin alleges that, as of August 2011, there were 141 reported fires that "involv[ed] lightning and CSST." See Compl. at ¶ 39. But he does not state in his allegations information that would help us make sense of this figure, like the frequency of lightning strikes, the proportion of homes struck by lightning, the relevant time frame, or the likelihood of lightning fires in homes without CSST. And to the extent that he does cite numbers, they suggest an exceedingly low probability. See Compl. at ¶ 28 (alleging that CSST is present in "over 5 million homes across the United States").

Second, even in the instances where Kerin alleges there has been "actual damage," it is unclear that CSST was the source. This distinguishes Kerin's case from others in which courts found enhanced risk from product defects sufficient for standing. For example, in Cole v. General Motors Corp., 484 F.3d 717 (5th Cir. 2007), the Fifth Circuit found standing where there was an enhanced risk that the side airbags of cars might deploy unexpectedly. Id. at 722-23. Because there were instances where the airbags had deployed unexpectedly, without a crash, there was no doubt that the airbags were defective and had caused actual damage. See id. at 718-20 (noting that car manufacturer issued voluntary recall

-12-

because it "ha[d] decided that a defect . . . exists"). This differs from Kerin's allegations. His three direct allegations that a "lightning strike punctured the CSST in a house, instigating a natural gas-fueled fire," fall short: two are speculative, Compl. at ¶¶ 4, 58, leaving only a single instance where a jury found against one of Titeflex's competitors, Compl. at ¶ 57. This is markedly different from <u>Cole</u>, where the defect was essentially conceded. And while he cites to 141 cases of actual fires, Kerin only alleges that both lightning and CSST were "involv[ed]," not that CSST was the <u>cause</u> of the damage or should not have itself failed under the circumstances.[3] Compl. at ¶ 39.

Finally, another consideration suggests that the risk carried by this product is not sufficient to give rise to a case or controversy. This is not a case of regulatory silence, but of regulatory approval of the "defective" product, after a study of the risks. Although not dispositive, this consideration carries particular weight because the political branches have, after study of the particular risk in question, concluded that such risk is both permissible and manageable. Here, it is not merely the case

---

[3] The other case relied on by Kerin, <u>Mazza</u> v. <u>Am. Honda Motor Co.</u>, 666 F.3d 581 (9th Cir. 2012), is inapposite. <u>Mazza</u> involved claims of false advertising about the limitations of Honda's automated braking system. <u>Id.</u> at 585-86, 595 (explaining that the system purportedly would alert the driver to brake and, if necessary, automatically brake). The Ninth Circuit held that class members had only suffered injury in fact to the extent that they had relied upon the misleading advertisements in being "relieved of their money." <u>See</u> <u>id.</u> at 595.

that CSST does not violate a regulatory standard.  To the contrary, Massachusetts regulations specifically permit the use of CSST, even with the known attendant risk of fire from lightning strikes.  <u>See, e.g.</u>, 248 Mass. Code Regs. 5.03, 5.04 (2014); <u>see also</u> <u>Mass. Board Policy</u>, <u>supra</u>.[4]  The National Fuel Gas Code, a model code co-sponsored by the American Gas Association and the National Fire Protection Association, also permits the installation of CSST with bonding and grounding to mitigate lightning risk.  <u>See</u> <u>National Fuel Gas Code</u>, ANSI Z223.1-2015 (NFPA 54-2015) §§ 5.6.3.4, 7.2.6, 7.3.2, 7.13.2, passim (2015 ed.); <u>National Fuel Gas Code</u>, ANSI Z223.1-2012 (NFPA 54-2012) §§ 5.6.3.4, 7.2.7, 7.3.2, 7.13.2, passim (2012 ed.); <u>see also</u> <u>NFPA 54 FAQs</u>, <u>supra</u>, ¶ 6 (explaining that a new requirement for bonding of CSST was added to reduce the risk that nearby lightning strikes will cause small holes in CSST, and that further research into the problem is ongoing).  Kerin does not

---

    [4]  The Massachusetts Board of State Examiners of Plumbers and Gas Fitters has directly considered this problem.  It temporarily rescinded product approval for CSST from November 2008 through February 2009 to "allow for resolution of the enforcement/requirement of extra bonding by the relevant authorities having jurisdiction." <u>Mass. Board Policy</u>, <u>supra</u>.  The Board also continues to monitor the risk.  Upon reinstating product approval, the Board specified measures for mitigating damages from indirect lightning strikes and reserved the right to "reconsider th[e] policy as well as past and future product approvals" in the event it receives evidence that manufacturers' efforts to mitigate indirect lightning strikes are not effective,  or in the event a new national standard is adopted that the manufacturers fail to meet.  <u>Id.</u>

contest these regulations, conceding that the required bonding "might address this issue." Compl. at ¶ 32 (emphasis in original).

Although we accept as true "'all well-pleaded fact[s] . . . and indulge all reasonable inferences'" in Kerin's favor, see Katz, 672 F.3d at 70 (citation omitted), "this tenet does not apply to statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory," see Blum, 744 F.3d at 795 (quoting Air Sunshine, Inc. v. Carl, 663 F.3d 27, 33 (1st Cir. 2011)) (internal quotation marks omitted). That is, we are not required to accept Kerin's conclusory and subjective allegations that the product is "defective" and presents an "unreasonable risk." Cf. Iannacchino, 888 N.E.2d at 888. Given this, and in light of Kerin's failure adequately to allege either facts sufficient to assess the likelihood of future injury or instances of actual damage where the cause is clear, we find that the alleged risk of harm is too speculative to give rise to a case or controversy.

We affirm the dismissal of the action.