# United States Court of Appeals
## For the First Circuit

No. 25-1395

THOMAS R. NARRIGAN, individually and on behalf of all others
similarly situated,

Plaintiff, Appellant,

v.

DEBORAH B. GOLDBERG, in her official capacity as Treasurer and
Receiver General of the Commonwealth of Massachusetts,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Terry Rose Saunders, with whom The Saunders Law Firm, Arthur
Susman, The Law Office of Arthur Susman, Edward A. Broderick, and
Broderick Law, P.C. were on brief, for appellant.

Arjun Kent Jaikumar, Assistant Attorney General of
Massachusetts, with whom Andrea Joy Campbell, Attorney General of
Massachusetts, was on brief, for appellee.

March 18, 2026

**LYNCH**, **Circuit Judge**.  Thomas R. Narrigan brought a putative class action under 42 U.S.C. § 1983 against the Treasurer and Receiver-General of the Commonwealth of Massachusetts ("Treasurer").  His complaint challenges Massachusetts's Disposition of Unclaimed Property Act, Mass. Gen. Laws ch. 200A, under the Takings Clause of the Fifth Amendment, as incorporated against the States by the Fourteenth Amendment.  Narrigan alleges that the Act's interest-payment provisions have resulted in an uncompensated taking of his private property for public use.  He has not yet brought a claim to recover his property under Mass. Gen. Laws ch. 200A, § 10(a).

The district court granted the Treasurer's motion to dismiss, finding that Narrigan lacked standing to seek injunctive or declaratory relief, that his claims were barred by the Eleventh Amendment, and that he did not state a plausible claim for relief.

Narrigan's arguments are susceptible to two readings, both of which fail.  First, we hold that Narrigan's apparent challenge to the interest rate he would be provided under the statute is not ripe.  Second, we hold that Narrigan lacks standing to seek injunctive or declaratory relief based on his assertion that his unclaimed property has already been taken.  Accordingly, we affirm the district court's dismissal.

Massachusetts enacted the Disposition of Unclaimed Property Act, Mass. Gen. Laws ch. 200A, in 1950. Under the statute, certain property that is held by one other than its owner and unclaimed for a set time is presumed abandoned. Mass. Gen. Laws ch. 200A, §§ 1A-6E. Once property valued at one hundred dollars or more is presumed abandoned, its holder must attempt to notify the property's apparent owner at his or her last known address of the available process to rebut that presumption. Id. § 7A. If the owner does not come forward, the holder must file a report, which for most property must include the owner's name and last known address. Id. § 7. The property will then be surrendered to the Treasurer, id. § 8A, who must provide public notice containing the "names of persons appearing to be owners of [the] unclaimed property," id. § 8(b) (emphasis added). The statute directs the Treasurer to "proceed with the liquidation of property" surrendered to her "not earlier than one year after its delivery," id. § 9(b), with all monies received placed in an "Unclaimed Property Fund," id. § 9(e). Whenever such fund exceeds five hundred thousand dollars, the excess is credited to the "General Fund." Id.

Individuals asserting "an interest in property surrendered to" the Treasurer may make a claim to recover the property at any time. Id. § 10(a). The claimant may request an

administrative hearing before the Treasurer, and the Treasurer's final decision is subject to judicial review in state court. Id. § 10(b), (d).

If an individual submits a successful claim, the statute provides for interest depending on the nature of his property. Id. § 10(e). If the property did not earn interest before delivery to the Commonwealth, the Act provides that the owner will receive 1% interest per year from the time of delivery to the Commonwealth. Id. If the property did earn interest prior to delivery to the Commonwealth, the Commonwealth will pay the preexisting interest rate up to 5% per year. Id.

Narrigan's complaint alleged that "[a]ccording to the Defendant's online records, Defendant holds Plaintiff's property." His complaint contained a screenshot from the Commonwealth's website, which displayed a list of information about the abandoned property in the Treasurer's possession, including the "Owner Name," "Address," and "Property Type." The screenshot showed two entries -- labeled as "miscellaneous intangible property" and "refunds," respectively -- associated with the name Thomas Narrigan and an address. Narrigan's complaint did not describe his connection to the address given in the Treasurer's records, nor did it explain what the "miscellaneous intangible property" or "refunds" in question were.

The complaint alleged that the Commonwealth's interest scheme deprives unclaimed-property owners of just compensation for the taking of their property because the interest rates specified in the statute are "not based on or related to the benefits to the Commonwealth from the use of the property." On behalf of a proposed class of similarly situated individuals, Narrigan sought a declaration that the Commonwealth's use of unclaimed property constitutes a taking and violates the Fifth Amendment and an injunction requiring the Commonwealth to comply with that declaration in dealing with future unclaimed-property disputes.

The Treasurer brought a motion to dismiss, arguing the case was not ripe because Narrigan had not yet made a claim for the property, so it was speculative whether he would ultimately be deprived of interest or just compensation as to the unclaimed property. The Treasurer further argued (i) that Narrigan's constitutional claims were barred by the Eleventh Amendment and sovereign immunity, (ii) that Narrigan lacked standing, and (iii) that Narrigan failed to state a claim.

On March 25, 2025, the district court dismissed Narrigan's claims on standing, sovereign immunity, and merits grounds. Narrigan v. Goldberg, 772 F. Supp. 3d 182, 187 (D. Mass. 2025). The court held that Narrigan lacked standing to seek prospective relief because he could not point to any future harm justifying the prospective relief that he sought. Id. at 191-92.

The court further found that the Commonwealth had not waived its Eleventh Amendment immunity and that Narrigan had not adequately invoked the Ex parte Young doctrine because the relief he sought was not truly prospective and was effectively a request for monetary compensation for a past violation.  Id. at 192-96.  Finally, as to the Takings Clause claim itself, the court reasoned that the state assuming possession of abandoned property is traditionally not considered a "taking," that Narrigan's property was "abandoned through his own neglect," and that the Commonwealth "provides a mechanism for [Narrigan] to reclaim his property in full."  Id. at 196-97.  The district court did not reach the Treasurer's ripeness argument.

## II.

Whether a plaintiff has standing is a legal question that we review de novo.  Kerin v. Titeflex Corp., 770 F.3d 978, 981 (1st Cir. 2014).  Because the class was not certified below, our review is limited to whether the named plaintiff has standing.  Id.  To demonstrate standing, the plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  A plaintiff's past injury, standing alone, is

insufficient to confer standing for prospective declaratory or injunctive relief; the plaintiff must show either a continuing injury or a "sufficient threat that the injury will recur." Roe v. Healey, 78 F.4th 11, 21 (1st Cir. 2023).

The doctrines of standing and ripeness are closely related, arising from the same Article III limitation. See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 n.5 (2014). Ripeness is a "doctrine[] of justiciability . . . originating in the case-or-controversy requirement of Article III." Trump v. New York, 592 U.S. 125, 131 (2020). To be ripe for consideration under Article III, a case must present "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of' the judicial relief sought." Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d 318, 326 (1st Cir. 2016)). "The ripeness of a dispute is determined de novo." Doe v. Bush, 323 F.3d 133, 138 (1st Cir. 2003).[1]

---

[1] In the district court, the Treasurer moved to dismiss on ripeness grounds. On appeal, the parties do not address ripeness but focus largely on standing. Nevertheless, "federal courts have an omnipresent duty to take notice of jurisdictional defects, on their own initiative if necessary." Whitfield v. Municipality of Fajardo, 564 F.3d 40, 44 (1st Cir. 2009).

- 7 -

## III.

We first consider Narrigan's claim under the construction of his complaint most favorable to his request for prospective relief: that the statutory rate paid by the Treasurer for the time-value of his property fails to sufficiently repay him interest on the unclaimed property. In his reply brief, Narrigan identifies his future injury as deriving from the Commonwealth's "ongoing use of his property and the consequent ongoing loss of the time value." Under this framing, Narrigan's assertion of a Takings Clause claim does not meet the Article III ripeness requirement.

To be sure, Narrigan has a right to reasonable interest accruing on any interest-bearing unclaimed property. As Judge Posner held in Cerajeski v. Zoeller, "[i]nterest on interest-bearing unclaimed property is unclaimed property too, and so the property owner can claim it upon proving title, unless the property has been escheated."[2] 735 F.3d 577, 582 (7th Cir. 2013). However, a taking has not yet occurred as to that interest. The Treasurer took possession of Narrigan's unclaimed property when it was delivered to her custody. See Knick v. Township of Scott, 588 U.S. 180, 189 (2019) ("[A] property owner has a claim for a

---

[2] Cerajeski also recognized that the "state can charge a fee for custodianship and for searching for the owner" of the unclaimed property, "but the interest on the principal in a bank account is not a fee for those services." 735 F.3d at 583.

violation of the Takings Clause as soon as a government takes his property for public use without paying for it."). But the Treasurer does not take the time-value of that property unless and until Narrigan claims the underlying property and the Treasurer then refuses to remit reasonable interest to him attributable to that time-value.

Narrigan admits that he has not yet made such a claim. Indeed, he identifies his injury as a future one, asserting that it would arise from "the Commonwealth's ongoing use of his property and the consequent ongoing loss of the time value." But without his making a demand for the underlying property, there has been no refusal to pay interest and thus no completed taking as to the time-value of the unclaimed property. Whether Narrigan is constitutionally entitled to any interest depends on facts that remain unknown, such as whether, absent the Commonwealth's alleged taking, the value of the property would have increased even without accruing interest so that Narrigan was deprived of that increase in value. Similarly, any claim by Narrigan to the time-value of his property is also dependent on the timing of his assertion of a claim, for the value of property is not linear but may rise and fall depending on the day. A party subject to a taking "is entitled to be put in as good a position pecuniarily as if his property had not been taken." Brown v. Legal Found. of Wash., 538 U.S. 216, 236 (2003) (quoting Olson v. United States, 292 U.S. 246, 255

- 9 -

(1934)).  Until Narrigan claims his property we cannot know what that position might be, so any alleged taking of its time-value remains speculative.  Because Narrigan's complaint as so characterized depends on contingent future events, it is not ripe for adjudication.  A claim is not ripe when it involves a "chain of speculation or contingencies."  Jensen v. R.I. Cannabis Control Comm'n, 160 F.4th 18, 26 (1st Cir. 2025); see also Algonquin Gas Transmission, LLC v. Weymouth, 919 F.3d 54, 62 (1st Cir. 2019) (asking "'whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all,' thus rendering any opinion we might offer advisory" (quoting Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 536 (1st Cir. 1995))).[3]

---

[3] The Eleventh Circuit found ripe a Takings Clause claim under a quite different state statute for "earnings accrued on the property after the Department liquidates and invests it."  Maron v. Chief Fin. Officer, 136 F.4th 1322, 1332 (11th Cir. 2025).  The court reasoned that "[b]ecause the Act makes clear that those earnings will not be compensated, ripeness does not further require the Marons to file a claim with the Department for those earnings and be denied."  Id.  We note that the Supreme Court has cautioned that "the 'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain."  Brown, 538 U.S. at 235-36.  Under Brown, the key is whether the statute will certainly deny a claimant the value that the property would have had had it remained in the claimant's possession (i.e., unliquidated and uninvested) the entire time.  Unlike the statute at issue in Maron, Massachusetts's Disposition of Unclaimed Property Act may entitle Narrigan to receive the full interest rate on the property.  See Mass. Gen. Laws ch. 200A § 10(e).  After all, Narrigan, unlike the plaintiffs in Maron, does not supportably allege that he will "not be paid for earnings accrued on [his] property," Maron, 136 F.4th at 1333, given that

- 10 -

**IV.**

Narrigan's complaint can also plausibly be construed as alleging that there has been a completed taking that occurred when his unclaimed property was delivered to the Treasurer. Under this construction, the claim would be ripe, but Narrigan would lack standing to pursue prospective relief.

The Supreme Court has made clear that a property owner's Takings Clause claim arises "as soon as a government takes [a plaintiff's] property . . . without paying for it." Knick, 588 U.S. at 189. The Knick Court explained that "[c]ompensation under the Takings Clause is a remedy for the 'constitutional violation' that 'the landowner has already suffered' at the time of the uncompensated taking." Id. at 193 (quoting San Diego Gas & Elec. Co. v. City of San Diego, 450 U.S. 621, 654 (1981) (Brennan, J., dissenting)). Under that framework, a plaintiff suffers a cognizable injury when he owns property and the Commonwealth takes possession of it without providing just compensation. The existence of that injury does not depend on whether the owner has filed a claim for return of the property. See id. Here, Narrigan alleges that he owned the unclaimed property at issue, the Treasurer took possession of it, and she did so without paying

_____

he does not allege that the interest rate on his property exceeds the rate the Treasurer is statutorily allowed to pay him.

- 11 -

just compensation.  Under Knick, his injury has already occurred, and so that claim is ripe.

But Narrigan seeks only prospective relief.  To have standing to pursue such relief, a plaintiff must show an ongoing injury or a sufficient likelihood of future injury.  See Nat'l Ass'n of Gov't Emps., Inc. v. Yellen, 120 F.4th 904, 910 (1st Cir. 2024).  If the taking alleged by Narrigan occurred at the moment his property was delivered to the Treasurer, then the injury is no longer ongoing.  Nor does Narrigan allege any plausible threat that the same injury will recur through a future taking.  Narrigan instead asserts that he faces ongoing harm because his property remains in the Commonwealth's accounts.  But even so, any such taking itself constitutes a past harm that has already occurred.  See James v. Hegar, 86 F.4th 1076, 1082 (5th Cir. 2023) (allegations of past unconstitutional taking insufficient to confer standing for prospective relief).  Because a completed taking cannot support standing for injunctive relief, Narrigan's claim must fail under this construction.

**V.**

We conclude that this complaint, for the reasons stated, does not meet the requirements of Article III.  The district court's dismissal is **affirmed**.