# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 16, 2026

Lyle W. Cayce
Clerk

No. 25-50559

———————

Christine Monahan, Lillian Taylor, and Renee Iannotti, *individually and on behalf of all others similarly situated*,

*Plaintiffs—Appellants*,

*versus*

Southwest Airlines Company,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:21-CV-887

———————————————————

Before Elrod, *Chief Judge*, and Willett and Wilson, *Circuit Judges*.

Per Curiam:[*]

In this class-action lawsuit, Plaintiffs sue Southwest Airlines Company (Southwest) on behalf of themselves and everyone who bought a Southwest plane ticket between August 2017 and March 2019. Two Southwest flights crashed during that period, but Plaintiffs were not ticketed to fly on those flights. Instead, Plaintiffs assert a broader breach-of-contract

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

claim based on alleged safety assurances that accompany all Southwest tickets. Plaintiffs allege that Southwest breached those promises by allowing inadequately trained pilots to fly unsafe planes in violation of federal regulations. At bottom, Plaintiffs' claim is that Southwest overcharged them for tickets because their flights were not as safe as Southwest promised.

The district court dismissed Plaintiffs' class-action complaint, concluding that Plaintiffs had not plausibly alleged an injury in fact as required for Article III standing. We agree that Plaintiffs fail to satisfy the injury-in-fact requirement, albeit for a different reason than the district court's: Our decision in *Earl v. Boeing Co.*, 53 F.4th 897 (5th Cir. 2022), forecloses Plaintiffs' alleged theory of economic injury. We therefore affirm.

## I.

Southwest's fleet of planes includes a variety of aircraft from Boeing's 737 series, including the Boeing 737 MAX 8 (MAX). In March 2019, the Federal Aviation Administration (FAA) grounded all MAX flight operations after two MAX aircraft crashed within five months. The technical details are unnecessary for our analysis, but the gist of Plaintiffs' allegations is that the MAX aircraft utilized an unsafe avionics tool called the Maneuvering Characteristics Augmentation System (MCAS). If a MAX plane's nose tipped too far upward, the MCAS automatically—and without notice to the pilots—redirected the nose of the aircraft downward. According to Plaintiffs, the MCAS "played a prominent role" in the two MAX airplane crashes.

Plaintiffs sued Southwest on behalf of themselves and a class consisting of people who purchased Southwest plane tickets for travel between August 29, 2017, and March 13, 2019. Plaintiffs concede that they never flew on a MAX aircraft during that period. Instead, they assert a more all-encompassing claim for breach of contract.

No. 25-50559

A Southwest plane ticket entitles its purchaser to transportation subject to Southwest's "Contract of Carriage" (CoC). Two aspects of the CoC are relevant to this case. First, the CoC allows Southwest to substitute aircraft without notice to passengers. Second, the CoC incorporates by reference Southwest's "Customer Service Commitment" (CSC). Plaintiffs call our attention to three of the CSC's safety assurances: (1) Southwest's pilots are trained to fly every type of plane in Southwest's fleet; (2) Southwest operates on safe aircraft; and (3) Southwest complies with FAA safety regulations.

Plaintiffs allege that Southwest breached those three "promises relating to safety" by flying the "unsafe" and "defective" MAX aircraft, by "not sufficiently training its pilots" to fly the MAX, and by violating FAA regulations. Plaintiffs assert that they were "overcharged by Southwest for their tickets as a result of Southwest's failure to fulfill its promises." Because the CoC allowed Southwest to substitute aircraft at will, buying a Southwest ticket meant "rolling the dice" on whether purchasers would end up flying on a MAX. Plaintiffs allege that Southwest caused them to suffer economic injury because Plaintiffs "did not receive the benefit of the bargain and were overcharged for the purchased tickets." Effectively, the flights were not as safe as promised, so Plaintiffs' tickets were not as valuable as marketed.

Southwest asked the district court to stay the proceedings because our court had recently granted an interlocutory appeal in *Earl v. Boeing Co. See* 53 F.4th at 901. Recognizing *Earl*'s potential impact on this case, the district court obliged and stayed the case. This court has since decided *Earl*, concluding that the plaintiffs there lacked any cognizable injury in fact, and therefore lacked Article III standing. *See generally id.* at 901–03.

3

No. 25-50559

The *Earl* plaintiffs alleged that Southwest (and Boeing) defrauded them by concealing the MAX's safety defects. *Id.* at 899–900.[1] The plaintiffs did not assert any physical injury resulting from the safety defects; rather, they argued that Southwest's fraud allowed it to charge prices that were "significantly higher than the value of those tickets, which for many, if not most, passengers was zero." *Id.* at 902. The idea was that if the public knew about the MAX's risks, demand would have dropped, and Southwest would have had to lower its ticket prices. *Id.* Because Southwest fraudulently concealed the risks, Southwest could and did overcharge its customers. *Id.*

Our court concluded that the plaintiffs' "theory of injury rest[ed] on two unsupportable inferences." *Id.* at 903. First, the plaintiffs had assumed that if the MAX's defects were known, then Southwest would have simply lowered its prices to offset the risk that passengers might die. *Id.* But "the more plausible inference" was that Southwest would have offered *no* MAX flights until the defects were fixed. *Id.* Second, the plaintiffs had assumed that the FAA, even with knowledge of the safety risks, would permit Southwest to keep using the MAX. *Id.* But this court found that inference to be "even more implausible than the first," especially because the FAA grounded the MAX after learning about the aircraft's safety issues. *Id.*

Therefore, "in all likelihood," awareness of the MAX's defects would have led to the MAX being taken off the plaintiffs' routes. *Id.* That would have caused ticket prices to go *up*, not down, because fewer available planes would mean more expensive tickets. *Id.* The plaintiffs thus had "not

---

[1] *Earl* concerned an interlocutory appeal of a district court order granting class certification. 53 F.4th at 900. But because Article III standing is a jurisdictional prerequisite to class certification, *see Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319 (5th Cir. 2002), *Earl*'s analysis started (and ended) with standing, *Earl*, 53 F.4th at 901–03.

4

plausibly alleged that they[ were] any worse off financially. . . . If anything, plaintiffs [were] likely better off financially." *Id.* Because the *Earl* plaintiffs offered no plausible theory of economic harm, they suffered no injury in fact and thus had no Article III standing to assert their claims. *Id.*

The district court distinguished this case from *Earl*. The court reasoned that, while the *Earl* plaintiffs' theory of economic injury relied on faulty assumptions about what would happen if the MAX's safety defects were known, Plaintiffs here theorize that they got less than what they paid for given Southwest's alleged breaches of the CoC. The district court thus concluded that Plaintiffs' theory of injury was not merely a "repackaged version" of the "overcharge-by-fraud" theory presented in *Earl*.

Setting *Earl* aside, the district court nonetheless concluded that Plaintiffs' alleged injury in fact was implausible. Plaintiffs did not claim to have flown on a MAX, so all of Southwest's alleged breaches related to aircraft on which Plaintiffs never flew. The district court therefore could not reasonably infer that Southwest overcharged Plaintiffs, and for that reason, the court dismissed Plaintiffs' complaint for lack of Article III standing.

## II.

Article III standing is a legal question that we review *de novo*. *Texas v. Rettig*, 987 F.3d 518, 528 (5th Cir. 2021).

Federal courts may only exercise jurisdiction over "'Cases' and 'Controversies.'" *Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021) (citing U.S. Const. art. III, § 2). A case or controversy exists only when a party has standing. And standing exists only when the party plausibly alleges three elements: "(1) an 'injury in fact,' (2) that is 'fairly . . . trace[able] to the challenged action of the defendant,' and (3) that is 'likely . . . redress[able] by a favorable decision.'" *Id.* (alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). The alleged injury must not be "too speculative for Article III purposes." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2).

## III.

While we agree with the district court's overarching reason for concluding that Plaintiffs lack Article III standing—that Plaintiffs fail to allege any cognizable injury—we disagree that *Earl* is materially distinguishable from this case. To the contrary, *Earl* forecloses Plaintiffs' theory of economic injury based on the facts as alleged in this case.

As far as Article III is concerned, this case is on all fours with *Earl*. Plaintiffs agree that this case arises from the same facts. And crucially, Plaintiffs' theory of injury is in substance the same as that in *Earl*. Plaintiffs allege that they were "overcharged by Southwest for their tickets" due to "Southwest's failure to fulfill its promises." In *Earl*, Plaintiffs' theory was that Southwest caused Plaintiffs to "pa[y] a fraud-induced overcharge at the time they bought their tickets." 53 F.4th at 901. At bottom, these claims—whether couched in terms of fraudulent concealment or breach of contract—rest on the idea that Southwest's conduct allowed the airline to overcharge its customers for plane tickets.

*Earl* repudiated that proposition. Given the same underlying facts, the *Earl* plaintiffs had no Article III standing because they had "not plausibly alleged that they[ were] any worse off financially. . . . If anything, plaintiffs [were] likely better off financially." *Id.* at 903. There could be no *over*charge claim if the claimants never lost any money. And without economic harm,

there was no injury in fact. *Id. Earl*'s injury-in-fact analysis maps neatly, if not perfectly, onto this case, and it dictates the same outcome: No plausible overcharges in *Earl*, no plausible overcharges here.

While Plaintiffs concede that the same facts as were determinative in *Earl* underlie their claim, they contend that "the legal theories and the basis for damages are different." But their attempted dichotomy gives away the problem with Plaintiffs' theory. Article III standing requires an injury in *fact*, not an injury in (legal) theory. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Here, Plaintiffs "conflate [their] causes of action with an injury-in-fact." *Dodson v. ExamWorks, LLC*, No. 25-50248, 2025 WL 655055, at *2 n.4 (5th Cir. Feb. 28, 2025) (per curiam). Their purported economic injury is the same as in *Earl*, *i.e.*, alleged overcharged plane tickets. Plaintiffs cannot recast that injury in a different cause of action and generate the Article III standing that was lacking in *Earl*.

Plaintiffs warn that interpreting *Earl* this way would "erect[ ] a categorical Article III bar to all airline overcharge claims." Not so. *Earl*'s injury-in-fact analysis was based on Southwest's alleged overcharging of tickets despite the MAX's safety risks. That is the same scenario alleged in the case before us, which is precisely why *Earl* resolves this case. Other facts missing here—such as plausible allegations that the airline would have lowered its prices—may produce different results.

Indeed, Plaintiffs' unsuccessful attempts to distance their claim from *Earl* demonstrate the limitations of *Earl*'s reach. First, Plaintiffs try to press the difference between fraud and contract claims by citing *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007), for the notion that breach-of-contract plaintiffs have Article III standing if they "adequately allege 'actual economic harm'" via overpayment. But this argument misunderstands the issue. As a general matter, we agree with the proposition that overpayment

could provide the basis for an Article III injury. The problem is that given the facts alleged in *this* case, *Earl* instructs that Plaintiffs do not adequately allege actual economic harm.

Second, Plaintiffs argue that our recent decision in *Wilson v. Centene Management Co.*, 168 F.4th 217 (5th Cir. 2026)[2] confirms that there is an Article III injury if "a plaintiff overpays for a service based on 'materially inaccurate' contractual representations." But that legal proposition is also beside the point. The problem with Plaintiffs' case is that their claim and *Earl* share the same underlying facts and purported economic injury. If anything, Plaintiffs' argument is harmed, not helped, by *Wilson*. In *Wilson*, this court specifically distinguished the case from *Earl* because unlike in *Earl*, it was "not an unsupportable inference" to assume that the *Wilson* plaintiffs "would have expected to pay less" or that they "would not have purchased" the product at all. *Id.* at 228. By distinguishing *Earl* on the facts, *Wilson* only confirms that *Earl*'s injury-in-fact analysis answers the Article III standing inquiry in the case before us, as both cases are grounded on the same alleged injury. For these reasons, the district court was wrong to distinguish *Earl* from this case.

We also note that, contrary to Plaintiffs' view, our holding today is consistent with *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445 (5th Cir. 2022). True enough, in *Denning*, this court held that an alleged breach of contract is a "sufficient injury for standing purposes." 50 F.4th at 451. But the alleged injury in *Denning was* the breach of contract itself, not economic harm; the plaintiff explicitly "conceded that she suffered no financial loss." *Id.* at 449. Here, Plaintiffs pleaded that they were injured not by Southwest's alleged

---

[2] Plaintiffs' briefs cite a withdrawn version of *Wilson*, but for purposes of our decision today, the differences between the two are irrelevant. *See Wilson v. Centene Mgmt. Co., LLC*, 144 F.4th 780 (5th Cir. 2025), *withdrawn*, 168 F.4th 217.

No. 25-50559

breach of contract but because they "were overcharged for the purchased tickets." If Plaintiffs had alleged that the breach of contract itself constituted their injury—as in *Denning*—then they may have fared better than in the case actually before us.[3] But as explained above, Plaintiffs' theory of injury-by-overcharge is the same as this court rejected in *Earl*.

One final note. Plaintiffs request that, should their claim falter, we instruct the district court to allow them to amend their complaint to allege a class consisting of people who actually purchased tickets for MAX flights. We decline to do so. As explained, Plaintiffs were not plausibly overcharged for their tickets. That injury-in-fact analysis applies regardless of the aircraft assigned to Plaintiffs' flights.[4] And because Plaintiffs have no standing to assert their claim in the first place, they cannot solve the problem by amending their complaint to name similarly-situated travelers. *See Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1283 (5th Cir. 1981).[5]

For the reasons explained above, Plaintiffs have not plausibly alleged an injury for purposes of Article III standing. And without standing, Plaintiffs' class action cannot proceed.

AFFIRMED.

---

[3] It is worth underscoring that Plaintiffs' complaint as well as their opening and reply briefs on appeal all unambiguously state that their asserted injury was the overcharge, not the breach of contract. Plaintiffs allege that they "were overcharged for the purchased tickets," and their appellate briefs insist that "overcharge is the injury" and that "Appellants' injury is a quantifiable economic shortfall." At no point have Plaintiffs argued that the mere breach of contract was itself their injury.

[4] In fact, Plaintiffs specifically disclaimed the notion that their claim hinged upon the particular aircraft they boarded.

[5] We offer no opinion, beyond our foregoing discussion, as to whether Plaintiffs could successfully replead and state a cognizable injury based on breach of contract rather than the overcharge theory foreclosed by *Earl*.